STATE v. RICKY GRANDSBERRY.

238 N. W. 2d 860.

January 9, 1976—No. 45405.

 

C. Paul Jones, State Public Defender, for appellant.

Warren Spannaus, Attorney General, Gary W. Flakne, County Attorney, and Vernon E. Bergstrom, Michael McGlennen, and David W. Larson, Assistant County Attorneys, for respondent.

PER CURIAM.

Defendant, after being referred by the juvenile court for prosecution as an adult, was found guilty by a district court jury of charges of attempted murder in the first degree, aggravated robbery, and aggravated assault, and was sentenced by the trial court to a term of 3 to 20 years' imprisonment on the attempted murder conviction. On this appeal from the judgment of conviction, defendant contends that he was denied due process in that the testimony of the victim and two witnesses who identified him was tainted by the police department's use of impermissibly suggestive photographic identification procedures. Because we disagree with this contention, we affirm.

At about midnight on September 27, 1975, Francis X. Williams, who was a part-time driver with the Blue and White Cab Company, received an order from his dispatcher to pick up a fare at 3115 First Avenue South, Apartment 302, in Minneapolis. Upon arriving there, Williams was met by two young males who instructed him to drive to a North Minneapolis address. Once at this address, one of the two passengers produced a gun, ordered Williams to turn over his money, and then fired one shot at close range into Williams' head, the bullet entering below his right ear and exiting below his left ear.

Williams temporarily lost consciousness, but when he came to he called for help on his radio. After Williams was taken to the hospital,

police drove to the last address written on Williams' trip sheet—3115 First Avenue South, Apartment 302—and talked with a number of persons, including the tenant of apartment 302 and her daughter and niece. After leaving the apartment, the police officer issued a pickup order for defendant and one Anthony Tucker.

Because defendant and Tucker were unavailable for participation in a lineup (defendant, it later turned out, had fled to Chicago when his mother told him police were looking for him), police were forced to use photographic identification procedures in order to determine whether they had properly focused their investigation on defendant and Tucker and also to permit the witnesses to make identification while the events were still fresh in their minds. Three persons viewed a photographic display, namely, Williams and the daughter and niece of the tenant of apartment 302. Williams identified defendant as the one who shot him and Tucker as the other passenger, and the two girls, saying that they had also seen defendant in the building before, identified him as the one who had come to their apartment on the night of the shooting and asked them to call a Blue and White cab. All three repeated their identifications at a lineup held when defendant turned himself in during October following the shooting. All three positively identified defendant at trial.

Contending that the photographic identification procedures used in this case were impermissibly suggestive, defendant points to a number of alleged irregularities:

(a) Sometime prior to showing Williams photographs, the police informed him that they believed they knew who his assailants were.

(b) Although Williams identified defendant and Tucker the first time he was shown photographs, police displayed photographs to him a second time.

(c) Defendant's photograph appeared twice (once with glasses, later without) in a book of about 50 photographs shown each of the girls.

Our review of the photographic identification procedures used in this case compels the conclusion that there was no substantial likelihood that the procedures employed resulted in misidentification of defendant as the one who shot Williams. See, Neil v. Biggers, 409 U. S. 188, 93 S. Ct. 375, 34 L. ed. 2d 401 (1972); Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. 2d 1247 (1968). This is not a case where police kept showing photographs to the witnesses until they identified the suspect. It is true that the police arguably emphasized defendant's photograph in the book of photographs they showed to the girls. However, they both had seen defendant before in the building and thus were acquainted with his appearance, and they both were positive in

their identification of defendant. It is therefore extremely unlikely that their identification of defendant resulted from any suggestiveness in the display. With respect to Williams' identification of defendant's photograph, it is true that the police had indicated to him that they had found the persons who did it, so Williams must have known that the photographs of the suspects were among the photographs shown him. But the police did not hint to Williams which two he should select, and he selected both of them each of the two times he looked at photographs. Further, on the night in question Williams became apprehensive about the intent of the passengers during the ride that preceded the commission of the crimes and therefore he carefully observed both passengers, a fact which bolsters his identification of defendant. In summary, we hold that there is no substantial likelihood that the identification procedures used resulted in misidentification of defendant.

Affirmed.